UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X   Chapter 7
In re:

Docket No.: 19-23465

Julie & Marc Ravage,

                    Debtors.
------------------------------X

## NOTICE OF PRESENTMENT OF ORDER VACATING LIENS OF:

1a. Erik Bartone
1b. Bart Financial, LLC
2. Crossroads II, LLC
3. Devcon Commons, LLC
4. Dynasty Liquor Enterprises Corp.
5. Prospect Plaza Improvements, LLC
6. Southern Glazers Wine & Spirits of New York LLC
7. Tbf Financial, LLC

## PURSUANT TO BANKRUPTCY CODE SECTION 522(f) AND OPPORTUNITY FOR HEARING

PLEASE TAKE NOTICE that upon the annexed application of Michael H. Schwartz, the undersigned will present the attached proposed order to the Honorable Judge Robert D. Drain, USBJ, United States Bankruptcy Court, SDNY for signature on August 24, 2020 at 12:00 p.m.

PLEASE TAKE FURTHER NOTICE that unless a written objection to the proposed order, with proof of service, is filed with the Clerk of the Court and a courtesy copy is delivered to the Bankruptcy Judge's chambers at least three days before the date of presentment, there will not be a hearing and the order may be signed.

PLEASE TAKE FURTHER NOTICE that if a written objection is timely filed, the Court will notify the moving and objecting parties of the date and time of the hearing and the moving party's obligation to notify all other parties entitled to receive notice. The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon

default.

Dated: White Plains, New York
      July 24, 2020

_____
Michael H. Schwartz
Michael H. Schwartz, P.C.
Attorney for Debtor
One Barker Avenue
White Plains, NY 10601
(914) 997-0071

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X    Chapter 7
In re:
                                   Docket No.: 19-23465
Julie & Marc Ravage,

                                   Affirmation in Support
                    Debtors.
----------------------------X
State of New York        )
                         : SS
County of Westchester    )

Michael H. Schwartz, duly admitted to practice before this Court, affirms under the penalties of perjury as follows:

1. I am the attorney for the debtors and am fully familiar with the facts stated herein. This is a core proceeding over which this court has jurisdiction to hear this matter pursuant to 28 U.S.C. Sections 157 and 1334.

2. This application is made to vacate the judicial lien of **Bart Financial, LLC in the Clerk's Office of the County of Westchester entered on April 15, 2019 under index number T002578/19 in the amount of $1,025,461.68 and Erik Bartone in the amount of $246,646.85** plus interest and/or any additional fees; on the debtors' property pursuant to 11 USC 522(f). See Exhibit A.

3. This application is made to vacate the judicial lien of **Crossroads II, LLC in the Clerk's Office of the County of Westchester entered on May 26, 2017 under index number 66184/2016 in the amount of $114,934.63** plus interest and/or any

additional fees; on the debtors' property pursuant to 11 USC 522(f). See Exhibit B.

4. This application is made to vacate the judicial lien of **Devcon Commons, LLC in the Clerk's Office of the County of Westchester entered on May 30, 2017 under index number 51167/2017 in the amount of $136,921.80** plus interest and/or any additional fees; on the debtors' property pursuant to 11 USC 522(f). See Exhibit C.

5. This application is made to vacate the judicial lien of **Dynasty Liquor Enterprises Corp. in the Clerk's Office of the County of Westchester entered on June 18, 2018 under index number 59427/2018 in the amount of $1,381,106.74** plus interest and/or any additional fees; on the debtors' property pursuant to 11 USC 522(f). See Exhibit D.

6. This application is made to vacate the judicial lien of **Prospect Plaza Improvements, LLC in the Clerk's Office of the County of Westchester entered on February 22, 2019 under index number 52965/2019 in the amount of $200,000.00** plus interest and/or any additional fees; on the debtors' property pursuant to 11 USC 522(f). See Exhibit E.

7. This application is made to vacate the judicial lien of **Southern Glazers Wine & Spirits of New York LLC in the Clerk's Office of the County of Westchester entered on September 27, 2017 under index number T004588-17 in the amount of $414,996.89**

plus interest and/or any additional fees; on the debtors' property pursuant to 11 USC 522(f). See Exhibit F.

8. This application is made to vacate the judicial lien of **Tbf Financial, LLC in the Clerk's Office of the County of Westchester entered on February 28, 2019 under index number 62963/2017 in the amount of $91,778.78** plus interest and/or any additional fees; on the debtors' property pursuant to 11 USC 522(f). See Exhibit G.

9. Julie & Marc Ravage, debtors herein, filed a petition under Chapter 7 of the Bankruptcy Code on August 14, 2019 and declared their homestead exemption. A copy of Schedules A/B and C are attached. See Exhibit H.

10. Julie & Marc Ravage own the residence located at 30 Landing Drive, Dobbs Ferry, NY 10522 ("Debtors' residence"). See Exhibit I.

11. On or about March 31, 2014, the debtors gave a mortgage on their residence to The Federal Savings Bank that was subsequently assigned to US Bank Home Mortgage. See Exhibit J.

12. As of October 7, 2019, the balance of the Mortgage was $533,047.75 See Exhibit K.

13. On or about May 3, 2017, the debtors gave a mortgage on their residence to Erik Bartone in the sum of $275,000.00. See Exhibit L.

14. On or about October 13, 2017, the debtors gave a mortgage

on their residence to Bart Financial, LLC in the sum of $300,000.00. See Exhibit M.

15. As of June 29, 2019, the value of the Property was $885,000.00. See Exhibit N.

16. The three mortgages total $1,108,047.75.

17. There are statutory tax liens of $44,115.01, See Exhibit O. The home is worth $885,000.00. There is no equity in the home.

17. The judicial liens fully impair the homestead exemption as being junior to the mortgage.

WHEREFORE, the debtors request the Court avoid the judicial liens as set forth in the attached proposed order.

Dated:    White Plains, New York
          July 24, 2020

                                    _____
                                    Michael H. Schwartz
                                    Michael H. Schwartz, P.C.
                                    Attorney for Debtor
                                    One Barker Avenue
                                    White Plains, NY 10601
                                    (914) 997-0071

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X    Chapter 7
In re:
                                   Docket No.: 19-23465
Marc & Julie Ravage,
                                   Affidavit of Service
                    Debtors.
------------------------------X

State of New York        }
                         : ss
County of Westchester    }

    I, Amy Radak, being duly sworn, hereby affirm under the
penalty of perjury: I am and at all times during the service of
process was, not less than 18 years of age and not a party to
the matter concerning which service of process was made.  I
further certify that the service of the attached **Notice of
Presentment of Order and Affirmation in Support** by regular mail
on 7/24/2020 to:

Bart Financial, LLC
Headquarters
Attn: Officer
30 Sebeth Drive
Cromwell, CT 06416

Mr. Erik Bartone
173 Horizon Lane
Glastonbury, CT 06033

Paykin Krieg & Adams, LLP
Headquarters
Attn: Officer
2500 Westchester Avenue
Purchase, NY 10577

Crossroads II, LLC.
Headquarters
Attn: Officer
118 N Bedford Road
Mount Kisco, NY 10549

Kurzman Eisenberg Corbin & Lever, LLP
Headquarters

Attn: Officer
One North Broadway
White Plains, NY 10601

Devcon Commons LLC
Headquarters
Attn: Officer
64 Palomba Dr.
Enfield, CT 06082

STARR & STARR PLLC
Headquarters
Attn: Officer
433 SOUTH MAIN ST STE 218
West Hartford, CT 06110

Dynasty Liquor Enterprise Corp
Headquarters
Attn: Officer
114-116 Ditmas Avenue
Brooklyn, NY 11218

Erika Kass, Esq.
1185 Queens Blvd
Brooklyn, NY 11218

HERTZ, CHERSON & ROSENTHAL, PC
Headquarters
Attn: Officer
118-35 Queens Blvd.
Ninth Floor
Forest Hills, NY 11375

Prospect Plaza Improvements, LLC
Headquarters
Attn: Officer
580 White Plains Road
3rd Floor
Tarrytown, NY 10591

Prospect Plaza Improvements, LLC
Headquarters
Attn: Officer
565 Taxter Avenue
Elmsford, NY 10523

Cuddy & Feder, LLP

Headquarters
Attn: Officer
445 Hamilton Avenue
14th Floor
White Plains, NY 10601

Southern Glazers Wine & Spirits
Headquarters
Attn: Officer
313 Underhill Blvd
Syosset, NY 11791

Tbf Financial, LLC
Headquarters
Attn: Officer
740 Waukegan Road, Suite 404
Deerfield, IL 60015

Marianne T. O'Toole, Esq.
22 Valley Road
Katonah, NY 10536

United States Trustee
201 Varick Street
New York, NY 10014

Amy Radak

Sworn, to before me this
24   day of July, 2020

_____
Notary Public

MICHAEL SCHWARTZ
NOTARY PUBLIC, STATE OF NEW YORK
NO. 41-4745659
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES 12-31-21

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X    Chapter 7
In re:
                                   Docket No.: 19-23465
Julie & Marc Ravage,

                 Debtors.
------------------------------X

## ORDER AVOIDING JUDICIAL LIENS OF:

      **1a. Erik Bartone**
      **1b. Bart Financial, LLC**
      **2. Crossroads II, LLC**
      **3. Devcon Commons, LLC**
      **4. Dynasty Liquor Enterprises Corp.**
      **5. Prospect Plaza Improvements, LLC**
      **6. Southern Glazers Wine & Spirits of New York LLC**
      **7. Tbf Financial, LLC**

## UNDER 11 U.S.C. Section 522(f)

Upon the motion, by Notice of Presentment dated July 24, 2020 ("the Motion"), of the above debtors, ("the Debtors"), by Michael H. Schwartz, P.C., seeking an order pursuant to 11 U.S.C. Section 522(f) avoiding judicial liens filed in the Clerk's Office of the County of Westchester by:

**Bart Financial, LLC in the Clerk's Office of the County of Westchester entered on April 15, 2019 under index number T002578/19 in the amount of $1,025,461.68 and Erik Bartone in the amount of $246,646.85 plus** interest and/or any additional fees;

**Crossroads II, LLC in the Clerk's Office of the County of Westchester entered on May 26, 2017 under index number**

66184/2016 in the amount of $114,934.63 plus interest and/or any additional fees;

Devcon Commons, LLC in the Clerk's Office of the County of Westchester entered on May 30, 2017 under index number 51167/2017 in the amount of $136,921.80 plus interest and/or any additional fees;

Dynasty Liquor Enterprises Corp. in the Clerk's Office of the County of Westchester entered on June 18, 2018 under index number 59427/2018 in the amount of $1,381,106.74 plus interest and/or any additional fees;

Prospect Plaza Improvements, LLC in the Clerk's Office of the County of Westchester entered on February 22, 2019 under index number 52965/2019 in the amount of $200,000.00 plus interest and/or any additional fees;

Southern Glazers Wine & Spirits of New York LLC in the Clerk's Office of the County of Westchester entered on September 27, 2017 under index number T004588-17 in the amount of $414,996.89 plus interest and/or any additional fees;

Tbf Financial, LLC in the Clerk's Office of the County of Westchester entered on February 28, 2019 under index number 62963/2017 in the amount of $91,778.78 plus interest and/or any additional fees on the debtors' property pursuant to 11 USC 522(f) on the debtors' interest in the real property located at 30 Landing Drive, Dobbs Ferry, NY 10522 (the "Property"); and

there being due and sufficient notice of the Motion and the hearing thereon; and there being no objections to the requested relief; and, after due deliberation, the Court having found and concluded that the foregoing judicial liens impair the applicable debtors' homestead exemption; and good and sufficient cause appearing, it is hereby;

**ORDERED,** that the motion is granted as provided herein; and it is further;

**ORDERED,** that the fixing of the judicial liens on the property and its proceeds filed in the Clerk's Office of the County of Westchester by

**Bart Financial, LLC in the Clerk's Office of the County of Westchester entered on April 15, 2019 under index number T002578/19 in the amount of $1,025,461.68 and Erik Bartone in the amount of $246,646.85** plus interest and/or any additional fees;

**Crossroads II, LLC in the Clerk's Office of the County of Westchester entered on May 26, 2017 under index number 66184/2016 in the amount of $114,934.63** plus interest and/or any additional fees;

**Devcon Commons, LLC in the Clerk's Office of the County of Westchester entered on May 30, 2017 under index number 51167/2017 in the amount of $136,921.80** plus interest and/or any additional fees;

Dynasty Liquor Enterprises Corp. in the Clerk's Office of the County of Westchester entered on June 18, 2018 under index number 59427/2018 in the amount of $1,381,106.74 plus interest and/or any additional fees;

Prospect Plaza Improvements, LLC in the Clerk's Office of the County of Westchester entered on February 22, 2019 under index number 52965/2019 in the amount of $200,000.00 plus interest and/or any additional fees;

Southern Glazers Wine & Spirits of New York LLC in the Clerk's Office of the County of Westchester entered on September 27, 2017 under index number T004588-17 in the amount of $414,996.89 plus interest and/or any additional fees;

Tbf Financial, LLC in the Clerk's Office of the County of Westchester entered on February 28, 2019 under index number 62963/2017 in the amount of $91,778.78 plus interest and/or any additional fees are avoided under 11 USC Section 522(f); provided, that the debtors may file a copy of this Order with such Clerk as alternative notice thereof.

Dated: White Plains, New York
        , 2020

_____
Hon. Robert D. Drain
U.S. Bankruptcy Judge



ABSTRACT OF JUDGMENT

T002578/19



000449282

Re: Bartone et al. v. Belmonte et al.

Case Number: 18-cv-9853 (NSR)

| Name(s) and Address(es) of Parties against whom Judgment(s) have been obtained | Name(s) and Address(es) of Parties in whose favor Judgment(s) have been obtained |
|---|---|
| Julie C. Ravage, 30 Landing Drive, Dobbs Ferry, New York 10522<br><br>Marc Ravage, 30 Landing Drive, Dobbs Ferry, New York 10522<br><br>Pinnacle Wine & Liquor, Inc., 30 Landing Drive, Dobbs Ferry, New York 10522 | Erik Bartone<br><br>Bart Financial, LLC, 30 Sebethe Drive, Cromwell, Connecticut 06416 |

| Amount of Judgment(s) | Name(s) and Address(es) of Attorney(s) | Entry Date of Judgment(s) |
|---|---|---|
| $246,646.85, jointly and severally against Julie C. Ravage, Marc Ravage and Pinnacle Wine and Liquor, Inc., in favor of Erik Bartone<br><br>$1,025,461.68, jointly and severally against Julie C. Ravage, Marc Ravage and Pinnacle Wine and Liquor, Inc., in favor of Bart Financial, LLC | Paykin Krieg & Adams LLP<br>Attorneys for Judgment Creditor<br>2500 Westchester Avenue<br>Suite 107<br>Purchase, New York 10577 | April 15, 2019<br><br>19 MAY 31 PM 12: 44 |

UNITED STATES OF AMERICA,
CLERK'S OFFICE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

I CERTIFY that the foregoing is a correct Abstract of the Judgment

APR 2 6 2019  Dated: New York          , New York

RUBY J. KRAJICK, Clerk of Court

By, Deputy Clerk

CLERK



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------X

CROSSROADS II, LLC,

                Plaintiff,

       -against-

EMPIRE WINE & LIQUOR SUPERSTORE, LLC,
EMPIRE WINE & LIQUOR SUPERSTORE CT, LLC,
INA SUPERSTORE, INC., and MARC RAVAGE

               Defendants.

--------------------------------------------------------------X

Index No.: 66184/2016

**JUDGMENT**

       The issue of Plaintiff's entitlement to damages in this action having been tried at an inquest before Justice David Everett without a jury at the Courthouse located at 111 Dr. Martin Luther King, Jr. Drive, White Plains, N.Y. on April 24, 2017 and Plaintiff Crossroads II, LLC, having appeared by its counsel, Kurzman Eisenberg Corbin and Lever, LLP, by Fred D. Weinstein, and the Defendants not having appeared and the Court having rendered a decision on the record in which the Court concluded that Plaintiff is entitled to recover damages in the amount of $93,141.06 together with prejudgment interest at the statutory rate calculated from October 20, 2015 through July 31, 2016 to the date of entry of judgment together with legal fees in the amount of $9,252.00;

       NOW, on motion of Kurzman Eisenberg Corbin and Lever, attorneys for the Plaintiff, IT IS ADJUDGED that:

       1.     Plaintiff, Crossroads II, LLC, residing at 1311 Theodore Fremd Avenue, Rye, N.Y. shall recover the sum of $102,393.06 from Empire Wine & Liquor Superstore, LLC, residing at 804 Pelham Parkway, Pelham Manor, New York, 10803, Empire Wine & Liquor

Superstore CT, LLC, residing at 47 Trotters Way, Torrington, CT 06790, INA Superstore, Inc.,

residing at 8 Lansing Avenue, Trumbull, Connecticut, 06611 and Mark Ravage residing at 30

Landing Drive, Dobbs Ferry, N.Y., together with statutory interest from October 20, 2015 to July

31, 2016 in the sum of $4671.53 and statutory interest from July 31, 2016 in the sum of $22.96 *$6,865.04*

per diem until the date of judgment and statutory interest on all unpaid amounts from the date of *plus costs and disbursements in the amount of $1,005.00 for a*

judgment to the date of payment. *total award of $114,934.63*

    2.   Plaintiff shall recover costs and disbursements taxed by the County Clerk in the

amount of $ *1,005.00*

    3.  Plaintiff shall have execution for the amount awarded in this Judgment.

                               Honorable David F. Everett

                               A.J.S.C.

Judgment entered this *26* day of

*May*    2017

Clerk, Supreme Court of
Westchester County

Total: $114,934.63

X 156—Bill of Costs (with CPLR sections)  Blank Court.      COPYRIGHT 1979 BY JULIUS BLUMBERG, INC., LAW BLANK PUBLISHER



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

*Index No.* 66184/2016

CROSSROADS II, LLC.

**Plaintiff(s)**

against

**Costs of** PLAINTIFF

EMPIRE WINE & LIQUOR SUPERSTORE, LLC,

EMPIRE WINE & LIQUOR SUPERSTORE CT, LLC,

INA SUPERSTORE, INC., and MARC SAVAGE

**Defendant(s)**

| COSTS | | | |
|---|---|---|---|
| Costs before note of issue CPLR §8201 subd. 1 | $200 00 | | |
| Costs after note of issue CPLR §8201 subd. 2 | | | |
| Trial of issue CPLR §8201 subd. 3 | $300 00 | | |
| Allowance by statute CPLR §8303(a)(b) | | | |
| Additional allowance CPLR §8302(d) | | | |
| Motion costs CPLR §8202 | | | |
| Appeal to App. Div. or App. Term before argument CPLR §8203 subd. 1 | | | |
| Appeal to App. Div. or App. Term for argument CPLR §8203 subd. 2 | | | |
| Appeal to Court of Appeals before argument CPLR §8204 subd. 1 | | | |
| Appeal to Court of Appeals for argument CPLR §8204 subd. 2 | | | |

| DISBURSEMENTS | | |
|---|---|---|
| Fee for index number CPLR §8018(a) | 210 00 | |
| Referee's fees CPLR §8301(a)1 | 3400 00 | |
| Commissioner's compensation CPLR §8301(a)2 | | |
| Clerk's fee, filing notice of pend. or attach. CPLR §8018(a) §8021(a)13 | | |
| Clerk's fee cancel. notice of pend. CPLR §8021(a)13 | | |
| Entering and docketing judgment CPLR §8301(a)7 §8016(a)1 | | |
| Paid for searches CPLR §8301(a)10 | | |
| Affidavits & acknowledgments CPLR §8009 | | |
| Serving copy summons & complaint CPLR §8011(a)1 §8301(d) | $240.00 | |
| Note of issue CPLR §8020(a) | | |
| Paid referee's report CPLR §8301(a)13 | | |
| Certified copies of papers CPLR §8301(a)4 | | |
| Satisfaction piece CPLR §8020(a) §8021 | | |
| Transcript and filing CPLR §8021 | $10 00 | |
| Certified copy of judgment CPLR §8021 | | |
| Postage CPLR §8301(a)12 | | |
| Jury fee CPLR §8020(c) | | |
| Stenographers' fees CPLR §8002 §8301 | | |
| Sheriff's fees on execution CPLR §8012 | | |
| Sheriff's fees, attachment, arrest, etc. CPLR §8011(a)17 §8012 | | |
| Paid printing case CPLR §8301(a)6 | | |
| Paid printing on CPLR §8301(a)6 | | |
| Clerk's fee, Court of Appeals CPLR §8301(a)13 | | |
| Paid copies of papers CPLR §8016(a)4 | | |
| Motion expenses CPLR §8301(b) | $45.00 | |
| Fees for identification CPLR §8301(a)3 | | |
| Serving subpoena CPLR §8011(a)1 §8301(d) | | |
| Paid for Register's Search CPLR §8021(a)10 | | |
| " " County Clerk's Search | | |
| " " Loan Commissioner's Search | | |
| " " U.S. District Court Search | | |
| " " U.S. Circuit Court Search | | |
| " " Tax Search | | |
| " " Referee's Report | | |
| Attendance of Witnesses: CPLR §8001(a)(b)(c) §8301(a)1 | | |

| | | | |
|---|---|---|---|
| Costs | $ | 500 00 | |
| Disbursements | 3505 00 | 485 00 | |
| Total | $1 005 00 | 985 00 | |

State of New York, County of ....................... ss.:

being duly sworn, deposes and says; that deponent is not
a party to the action, is over 18 years of age and resides
at
That on the ............ day of ............ 19......
deponent served the within bill of costs and notice of
taxation on

attorney(s) for

herein, at his office at

during his absence from said office
strike out either (a) or (b)
(a) by then and there leaving a true copy of the same
with

his clerk; partner; person having charge of said office.
(b) and said office being closed, by depositing a true copy
of same, enclosed in a sealed wrapper directed to said
attorney(s), in the office letter drop or box.

Sworn to before me, this
day of ............................ 19......

State of New York, County of ....................... ss.:

being duly sworn, deposes and says; that deponent is not
a party to the action, is over 18 years of age and resides
at
That on the ............ day of ............ 19......
deponent served the within bill of costs and notice of
taxation on

attorney(s) for
at

the address designated by said attorney(s) for that purpose
by depositing a true copy of same enclosed in a postpaid
properly addressed wrapper, in—a post office—official de-
pository under the exclusive care and custody of the United
States Postal Service within New York State.

Sworn to before me, this
day of ............................ 19......

4 of 4

Index No. 66184/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

CROSSROADS II, LLC

Plaintiff(s)

against

EMPIRE WINE & LIQUOR SUPERSTORE, LLC,
EMPIRE WINE & LIQUOR SUPERSTORE CT, LLC,
INA SUPERSTORE, INC. and MARC RAVAGE
Defendant(s)

# Bill of Costs
### And Notice of Taxation

Sir: Please Take Notice that the within is a true copy
of the items of costs and disbursements in the within
action—taxed—*and that the same will be      taxed—
by the Clerk of
Costs, at his office in the courthouse thereof on the
............ day of ............ 19......
at ............ o'clock in the ............ noon
of that day—and the amount inserted in the judgment.

Yours, etc.

KURZMAN EISENBERG CORBIN & LEVER, LLP
Attorney(s) for
CROSSROADS II, LLC

To

Attorney(s) for

Service of the within bill of costs and notice of
taxation is hereby admitted this ............ day
of ............................ 19......

Attorney(s) for

* Strike out one (CPLR §8420 §8403)

NYSCEF DOC. NO. 15

State of New York, County of ............ ss.:

Dated: May 15, 2017

The undersigned, an attorney admitted to practice in the courts of this state, affirms that he is FRED D. WEINSTEIN, ESQ.,

Attorney's Affirmation

FRED D. WEINSTEIN, ESQ.

INDEX NO. 66184/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

-----------------------------------------------------------x
DEVCON COMMONS, LLC,                         :
                                             :        Index No.: 51167/2017
                Plaintiff,                   :
                                             :
        -against-                            :
                                             :        **JUDGMENT**
EMPIRE WINE & LIQUOR SUPERSTORE              :
CT, LLC and MARC RAVAGE,                     :
                                             :
                                             :
                Defendants.                  :
                                             :
-----------------------------------------------------------x

        Whereas, plaintiff having moved for summary judgment in lieu of complaint pursuant to
CPLR § 3213, and an order of Justice Lawrence H. Ecker having been entered in favor of plaintiff and
filed on May 18, 2017 by the Westchester County Clerk, which directed entry of judgment against
defendant Marc Ravage, in the amount of $129,192.01 with interest as computed by the Clerk at the
statutory rate of 9% per annum from October 19, 2016, and costs and disbursements as taxed by the
Clerk, it is

        ADJUDGED, that plaintiff Devcon Commons, LLC, with an address of 433 South Main Street,
Ste. 218, West Hartford, CT 06110, has judgment and recovers of defendant, Marc Ravage, with an
address of 30 Landing Drive, Dobbs Ferry, NY 10522-1182, the sum of $129,192.01, plus interest
thereon at the rate of 9% per annum from October 19, 2016 as calculated by the Clerk in the amount of
$ 7,103.79 , plus costs and disbursements as taxed by the Clerk in the amount of
$ 626.00 , making a total of $ 136,921.80 , and that plaintiff have execution therefor.

        Judgment entered this 30ᵗʰ day of May 2017.

        _____
                        CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------x
DEVCON COMMONS, LLC,           :

                                    :      Index No.: 51167/2017

           Plaintiff,        :

                                      :

      -against-           :

                                      :      <u>COSTS OF PLAINTIFF</u>
EMPIRE WINE & LIQUOR SUPERSTORE  :
CT, LLC and MARC RAVAGE,      :

                                      :

           Defendants.       :

                                      :
-------------------------------------------------------------x

       The undersigned, an attorney admitted to practice in the courts the State of New York, and attorney of record for Plaintiff(s) herein affirms under penalties of perjury:

       The costs sought and the disbursements set forth below are true and accurate and that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in amount:

<u>COSTS</u>
Costs for Proceedings before Note of Issue filed (CPLR § 8201(1)) . . . . . . . .  $200.00  $200.00

<u>DISBURSEMENTS</u>
Index Number Fee (CPLR § 8018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $210.00
Request for Judicial Intervention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $ 95.00
Serving summons with notice (CPLR § 8301(d) and 8011(h)*. . . . . . . . . . . . .  $ 76.00
Sheriff's Fee on Execution (CPLR § 8011, 8012) . . . . . . . . . . . . . . . . . . . . . . .  $ 45.00  $426.00

Total Costs . . . . . . . . . .  $200.00
Total Disbursements . .  $426.00
TOTAL . . . . . . . . . . . . .  $626.00

Dated: May 25, 2017               By: _____
                                          Stephen Z. Starr
                                        Attorney for Plaintiff
                                        STARR & STARR, PLLC
                                        260 Madison Ave., 17th Floor
                                        New York, NY  10016
                                        tel.:  (212) 867-8165

* Copy of receipt(s) attached.

## 6747 - STARR & STARR, PLLC

Back to Client Services Home

UNITED
➡ *PROCESS*
SERVICE ⅍

## Monthly Charges for February 2017

This is the detailed list (and total) of all charges billed for the month selected. Statements earlier than October 1997 are not available on-line.

Where applicable, work ticket numbers are clickable links which will display a copy of the appropriate affidavit of service.

| Case Description | Service | Charge |
|---|---|---|
| Work Ticket #: 666041 | | |
| Plaintiff: DEVCON COMMONS, LLC    File#: 40270.001 | Mailing Fees | $6.00 |
| Defendant: EMPIRE WINE & LIQUOR SUPERSTORE CT, LLC, ETANO | Basic Service Charge | $70.00 |
| Recipient: MARC RAVAGE | | |
| Date of Service: 2/07/17 | | $76.00 |
| Type of Papers: SUMMONS & NOTICE OF MOTION FOR SUMMARY JUDGEMENT IN LIEU OF COMPLAINT, AFFIDAVIT OF J.R. CODY III IN SUPPORT OF PLAINTIFF'S* | | |

*Total:* **$76.00**

[Top] [Back to Client Services Home]

**SUPREME COURT**
**STATE OF NEW YORK, COUNTY OF** WESTCHESTER | Index No. | 51167 | 2017
Year

---

DEVCON COMMONS, LLC,

v.

EMPIRE WINE & LIQUOR SUPERSTORE CT, LLC and MARC RAVAGE,

---

JUDGMENT

---

**STARR & STARR, PLLC**

*Plaintiff*
Attorney(s) for
*Office and Post Office Address, Telephone*

260 Madison Avenue
17th Floor
New York, NY 10016
tel 212-867-8165, fax 212-867-8139

---

To

Signature (Rule 130-1.1-a)

Print name beneath

Stephen Z. Starr

Service of a copy of the within is hereby admitted.

Dated: _____

Attorney(s) for

---

**PLEASE TAKE NOTICE:**

NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

NOTICE OF SETTLEMENT

that an order                                        of which the within is a true copy
will be presented for settlement to the HON.        one of the judges of the
within named Court, at
on                          at              M.

Dated,                          Yours, etc.

**STARR & STARR, PLLC**



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
DYNASTY LIQUOR ENTERPRISES CORP.,

                                        Plaintiff,

            -against-

PINNACLE WINE & LIQUOR INC, JULIE C. RAVAGE,
MARC RAVAGE, AND BRANDON BELMONTE,

                                        Defendants.
-------------------------------------------------------------------X

INDEX NO.

JUDGMENT BY
CONFESSION

Upon reading and filing the annexed affidavit of confession of judgment, executed by the
defendants: Pinnacle Wine & Liquor, Inc., by Julie C. Ravage as President; Julie C. Ravage,
Marc Ravage; and Brandon Belmonte, and on motion of Erica Kass, attorney for Plaintiff, it is

ORDERED, ADJUDGED AND DECREED, that the plaintiff, Dynasty Liquor Enterprises
Corp., with a principle address at 114-116 Ditmas Avenue, Brooklyn, NY 11218, County of
Kings, State of New York, recover of the defendants, Pinnacle Wine & Liquor, Inc. with a
principle address at 30 Landing Drive, Dobbs Ferry, NY 10522, County of Westchester, State of
New York; Julie C. Ravage, residing at 30 Landing Drive, Dobbs Ferry, NY 10522, County of
Westchester, State of New York; Marc Ravage, residing at 30 Landing Drive, Dobbs Ferry, NY
10522, County of Westchester, State of New York; the sum of $1,296,621.55, with $84,260.19
interest thereon, and the sum of $225.00, costs and disbursements as taxed, amounting in all to
the sum of $1,381,106.74, and that plaintiff have execution therefor.[1]

Judgment signed this 18 th day of  June   , 2018.

Court Clerk

---

[1] The Defendant Brandon Belmonte is severed from the Westchester County Judgment by Confession although he
remains in the caption.



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------------------------------X

PROSPECT PLAZA IMPROVEMENTS, LLC,
c/o DLC Management Corp
565 Taxter Road          Plaintiff,
Suite 400
Elmsford, New York 10523
                    -against-

MARC B. RAVAGE,
                              Defendant.

------------------------------------------------X

CREDITOR

**AFFIDAVIT
IN SUPPORT OF
REGISTRATION OF
FOREIGN JUDGMENT**

Index No. 52965/2019

BRENDAN M. GOODHOUSE, an attorney duly admitted to practice law before the courts of the State of New York, affirms under penalties of perjury, as follows:

1.      I am an associate with Cuddy & Feder LLP, attorneys for Plaintiff-Judgment Creditor PROSPECT PLAZA IMPROVEMENTS, LLC, ("Plaintiff"). This Affidavit is being filed pursuant to CPLR 5402.

2.      Annexed hereto as Exhibit A is an Exemplified copy of a judgment (the "Judgment") duly authenticated on February 11, 2019, entered against Defendant MARC B. RAVAGE, ("Defendant") and in favor of Plaintiff on October 24, 2019 in an adversary proceeding in the Connecticut Superior Court, Judicial District of Hartford, Housing Session of Hartford (Docket No. HFH-CV17-6004445-S).

3.      The Judgment is final.

4.      The Judgment was not obtained by default in appearance or by confession of judgment.

5.      The Judgment is unsatisfied in whole.

6.      The amount remaining unpaid on the Judgment is $200,000.00, together with statutory interest thereon.

7.      The enforcement of such Judgment has not been stayed.

8.      The name of the Defendant is Marc B. Ravage.

C&F:2197X00.1

9. The last known address of Defendant is 30 Landing Drive, Dobbs Ferry, New York 10522.

Dated: White Plains, New York
February 21, 2019

BRENDAN M. GOODHOUSE

Sworn to before this
21st day of February, 2018

Notary Public

DANIELLE R. CALDER
Notary Public, State of New York
No. 01CA6275213
Qualified in Westchester County
Commission Expires January 22,

02-22-2019

C&F: 2197010.1

2

# Exhibit A

## STATE OF CONNECTICUT
## JUDICIAL DISTRICT OF HARTFORD
## SUPERIOR COURT



### EXEMPLIFIED COPY

I, __Leanne Kennedy_____ Clerk of the Superior Court within and for said Judicial District, in the State of Connecticut, and keeper of the records and seal thereof, hereby certify that the above and foregoing is a true copy of

***Deputy Chief Clerk of the Superior Court, Housing Session at Hartford

Stipulated Agreement of the Parties and Order #116.10

In testimony whereof I hereunto set my hand and affix the seal of said Court at __HARTFORD_____ in said Judicial District and State on *(date)*: __02/11/2019___

_____ *Clerk*

STATE OF CONNECTICUT
JUDICIAL DISTRICT OF        } SS. HARTFORD
HARTFORD

I, __Rupal Shah_____ Presiding Judge of the Superior Court for the State of Connecticut, in said Judicial District, do hereby certify that __Leanne Kennedy_____ whose name is above written and subscribed, is and was at the date thereof __02/11/2019_____ Clerk of said Superior Court duly appointed, commissioned and sworn, and keeper of the records and seal thereof, and that the above certificate by him/her made, and his/her attestation of record thereof, is in due form of law.

In testimony whereof I have hereunto set my hand on *(date)*:   __02/11/2019___

_____ *Presiding Judge, Superior Court*

STATE OF CONNECTICUT
JUDICIAL DISTRICT OF     } SS.   HARTFORD
HARTFORD

I, __Leanne Kennedy_____ Clerk of the Superior Court of the State of Connecticut, within and for said Judicial District, and keeper of the seal thereof, hereby certify that the honorable __Rupal Shah_____ whose name is within written and subscribed, was on the day of __02/11/2019_____ and now is Presiding Judge of said court, duly appointed, commissioned, and sworn, and qualified; and that I am well acquainted with his/her handwriting and official signature and know and hereby certify the same within written to be his/hers.

In testimony whereof I hereunto set my hand and affix the seal of said court at __HARTFORD_____ in said Judicial District and State on *(date)*: __02/11/2019___

_____ *Clerk*

JD-CL-39H Rev. 0/02

STIPULATED AGREEMENT
OF THE PARTIES
JD-HM-11 Rev. 4-2000

STATE OF CONNECTICUT
SUPERIOR COURT
HOUSING SPECIALIST
www.jud.ct.gov

| COURT | | DOCKET NO. |
|---|---|---|
| ☒ Housing Session at HARTFORD | ☐ G.A. No. _____ | HFH CV17-6004445 |

NAME OF CASE
PROSPECT PLAZA IMPROVEMENTS LLC V. NMG, INC., DBA EMPIRE WINE & LIQUOR SUPERSTORE

## STIPULATED AGREEMENT OF THE PARTIES

The parties hereby stipulate and agree as follows:

Judgment may enter in favor of the Plaintiff in the amount of $200,000.00, with the following additional terms and conditions

1. The Defendant* agrees to pay $20,000.00 to the Plaintiff within sixty (60) days, or by no later than December 21, 2018

2. The Defendant agrees to provide the Plaintiff with a full asset disclosure with thirty (30) days, or by no later than November 21, 2018, including copies of his most recent tax return (which will remain confidential) and information regarding ownership interests in any business entities

3. If the Defendant complies with paragraphs 1 & 2 above, then the Plaintiff agrees to reduce the judgment to $150,000.00

4. If the Defendant defaults on paragraphs 1 and/or 2, then the Defendant will remain liable for $200,000.00

5. Counsel for the Plaintiff and Counsel for the Defendant are both authorized to enter into this agreement on behalf of their respective clients

6. The parties waive court canvass

* The Defendant shall mean Marc B. Ravage

| PLAINTIFF(S) | DEFENDANT(S) | |
|---|---|---|
| HOUSING SPECIALIST M.S. ENSALC | DATE SIGNED | 10/22/18 |
| APPROVED (Signature of Judge) , J. | DATE SIGNED | |

DISTRIBUTION:     ORIGINAL - Court File     1st Copy - Plaintiff     2nd Copy - Defendant     3rd Copy - Housing Specialist

STIPULATED AGREEMENT OF THE PARTIES

ORDER   435708

DOCKET NO: HFHCV176004445S                    SUPERIOR COURT

PROSPECT PLAZA IMPROVEMENTS,                  HOUSING SESSION
LLC                                            AT HARTFORD
    V.
NMG, INC., D/B/A EMPIRE WINE &                10/24/2018
LIQUOR SUPERSTORE Et Al

## ORDER

ORDER REGARDING:
10/23/2018 116.00 STIPULATION

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED
Disposition: JDGSTPP - JUDGMENT FOR PLAINTIFF BY STIPULATION BEFORE TRIAL
COMMENCED

Short Calendar Results Automated Mailing (SCRAM) Notice was sent on the underlying motion.

435708
_____

Judge: RUPAL SHAH

HFHCV176004445S   10/24/2018                              Page 1 of 1



T004588-17

## Transcript of Judgment

Judgment No : 2017-00011136

Filed On : 09/27/2017

Kind : JUDG

Index No : SU-2017-002841

Balance :               $414,996.89

Case :

| PLAINTIFF | DEFENDANT |
|---|---|
| SOUTHERN GLAZERS WINE & SPIRITS OF NEW YORK LLC<br>313 UNDERHILL BLVD<br>SYOSSET, NY 11791 | PINNACLE WINE & LIQUOR INC<br>114 116 DITMAS AVE<br>BROOKLYN, NY 11218<br>RAVAGE, JULIE C<br>30 LANDING DR<br>DOBBS FERRY, NY 10522 |

### Transaction Entries

| Case Description | Comment | Tran Date | Tran Time | Amount |
|---|---|---|---|---|
| JUDGMENT | | 09/27/2017 | 2:07:14 PM | $414,996.89 |
| COURT: SUPREME | | | | $0.00 |
| WHERE PERFECTED: ONONDAGA | | | | $0.00 |
| TRANSCRIPT ISSUED | (2) | 10/03/2017 | | $0.00 |

| Plaintiff Attorney | Defendant Attorney |
|---|---|
| BOND SCHOENCK & KING 1 LINCOLN CENTER SYRACUSE NY 13202 | |

STATE OF NEW YORK, COUNTY OF Onondaga

I, Lisa Dell, County Clerk of the County of Onondaga hereby certify that the above is a correct transcript from the docket of judgments in my office
IN TESTIMONY WHEREOF, I have hereunto set my name and affixed my official seal this 3rd DAY of October 2017.

Lisa Dell, County Clerk - Onondaga County

TIMOTHY C. IDONI
WESTCHESTER COUNTY CLERK

17 OCT 16 PM12:20
FILED

00003535



Supreme Court Of The State Of New York
County Of Westchester

PBA No. 012303

Tbf Financial, Llc
a/a/o Kabbage, Inc.,
a/a/o Celtic Bank Corporation

*Index No. 62963/17*

*Calendar No.*

Plaintiff(s)

against

*Judgment Rendered in Favor of*

Tbf Financial, Llc
a/a/o Kabbage, Inc.,
a/a/o Celtic Bank Corporation

Marc B. Ravage

*Plaintiff(s)*

Defendant(s)

*Residing at*
740 Waukegan Road, Suite 404
Deerfield IL 60015

| | | |
|---|---|---|
| Amount awarded after decision and order | $ | 80450.00 |
| Interest | | 10836.28 |
| Less payments made | | .00 |
| | Total $ | 91286.28 |
| Costs by Statute | $ 200.00 | |
| Service of summons and complaint | 50.00 | |
| Filing of summons and complaint | .00 | |
| Prospective Marshal's Fee | 22.50 | |
| Filing of Notice of Trial | .00 | |
| Fee for Index Number | 210.00 | |
| Transcript of Judgment | 10.00 | 492.50 |
| Counsel Fees | | |
| | Total $ | 91778.78 |

STATE OF NEW YORK, COUNTY OF WESTCHESTER

**ATTORNEY'S AFFIRMATION**

The undersigned, attorney at law of the State of New York, one of the attorney(s) of record for the plaintiff(s) in the above entitled action, states that the disbursements above specified have been or will necessarily be made or incurred therein and are reasonable in amount.

The undersigned affirms this statement to be true under the penalties of perjury.

Dated: Feb 24, 2019

PETER B. ACKERMAN

Plaintiff(s) having moved for judgment, and the Court having rendered its decision and Order granting that relief, said Order being dated and entered on                    , and said Order having directed the entry of judgment in favor of Plaintiff(s),

NOW, ON MOTION OF Peter B. Ackerman, Esq.
222 Mamaroneck Avenue, Suite 202 White Plains, New York, 10605 (914) 686-1200
attorney(s) for the plaintiff(s) it is,
ADJUDGED that Tbf Financial, Llc a/a/o Kabbage, Inc.,
         a/a/o Celtic Bank Corporation          *plaintiff(s),*
*residing at* 740 Waukegan Road, Suite 404 Deerfield IL 60015
*recover(s) of* Marc B. Ravage
                                      *defendant(s),*
*residing at* 30 Landing Dr. Dobbs Ferry NY 10522
*the sum of $ 80450.00    with interest of $ 10836.28*
*together with $   492.50   costs and disbursements, amounting in all to the sum of $* 91778.78
*and that plaintiff(s) have execution therefor.*

*DATED AND ENTERED ON*
February 28 th 2019

Clerk

1 of 1



| Debtor 1 | Julie Chu-Hui Ravage | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | Marc B. Ravage | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK - WP

Case number 19-23465

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
■ Yes. Where is the property?

1.1

| 30 Landing Drive | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|
| Street address, if available, or other description | ☐ Single-family home | |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | |
| Dobbs Ferry　　NY　　10522-0000 | ☐ Land | Current value of the entire property?　　Current value of the portion you own? |
| City　　　　State　　ZIP Code | ☐ Investment property | $885,000.00　　　$885,000.00 |
| | ☐ Timeshare | |
| | ■ Other　Townhome | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | **Who has an interest in the property?** Check one | |
| Westchester | ☐ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ■ Debtor 1 and Debtor 2 only | |
| | ☐ At least one of the debtors and another | ☐ Check if this is community property (see instructions) |
| | Other information you wish to add about this item, such as local property identification number: | |

| Debtor 1 | Julie Chu-Hui Ravage | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | Marc B. Ravage | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF NEW YORK - WP

Case number  19-23465
(if known)

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:  Identify the Property You Claim as Exempt

1. Which set of exemptions are you claiming? *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | | Specific laws that allow exemption |
|---|---|---|---|---|
| 30 Landing Drive Dobbs Ferry, NY 10522  Westchester County<br>Line from *Schedule A/B*: 1.1 | $885,000.00 | ■ | $1.00 | NYCPLR § 5206 |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| Usual and Miscellaneous Household Furnishings<br>Line from *Schedule A/B*: 6.1 | $2,200.00 | ■ | $2,200.00 | NYCPLR § 5205(a)(5) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| Electronics<br>Line from *Schedule A/B*: 7.1 | $500.00 | ■ | $500.00 | NYCPLR § 5205(a)(5) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| Books, pictures<br>Line from *Schedule A/B*: 8.1 | $250.00 | ■ | $250.00 | NYCPLR § 5205(a)(2) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |
| Sports equipment<br>Line from *Schedule A/B*: 9.1 | $200.00 | ■ | $200.00 | NYCPLR § 5205(a)(1) |
| | | ☐ | 100% of fair market value, up to any applicable statutory limit | |

| Debtor 1 | Julie Chu-Hui Ravage | | | |
|---|---|---|---|---|
| Debtor 2 | Marc B. Ravage | | Case number (if known) | 19-23465 |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>Check only one box for each exemption. | Specific laws that allow exemption |
|---|---|---|---|
| Usual and customary wearing apparel<br>Line from *Schedule A/B*: 11.1 | $9,200.00 | ■ $9,200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | NYCPLR § 5205(a)(5) |
| Jewelry<br>Line from *Schedule A/B*: 12.1 | $3,500.00 | ■ $1,700.00<br>☐ 100% of fair market value, up to any applicable statutory limit | NYCPLR § 5205(a)(6) |
| Home office equipment<br>Line from *Schedule A/B*: 14.1 | $300.00 | ■ $300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | NYCPLR § 5205(a)(7) |
| Checking & Savings Account: Capital One<br>Line from *Schedule A/B*: 17.1 | $1,855.21 | ■ $1,706.79<br>☐ 100% of fair market value, up to any applicable statutory limit | NYCPLR § 5205(d)(2) |
| Checking Account: Citi Frozen<br>Line from *Schedule A/B*: 17.2 | $3,600.00 | ■ $3,240.00<br>☐ 100% of fair market value, up to any applicable statutory limit | NYCPLR § 5205(d)(2) |
| 401k: Empower<br>Line from *Schedule A/B*: 21.1 | $287,409.96 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | Debtor & Creditor Law § 282(2)(e) |
| IRA: Putnam Investments<br>Line from *Schedule A/B*: 21.2 | $71,426.50 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | Debtor & Creditor Law § 282(2)(e) |
| Metropolitan Life Insurance Company Term Policy<br>Beneficiary: Spouse<br>Line from *Schedule A/B*: 31.1 | $0.00 | ■ 100%<br>☐ 100% of fair market value, up to any applicable statutory limit | NY Ins. Law § 3212, Est. Pow. & Tr. § 7-1.5, NYCPLR § 5205(i) |
| Metropolitan Life Insurance Company Term Policy<br>Beneficiary: Spouse<br>Line from *Schedule A/B*: 31.2 | $0.00 | ■ $0.00<br>☐ 100% of fair market value, up to any applicable statutory limit | NY Ins. Law § 3212, Est. Pow. & Tr. § 7-1.5, NYCPLR § 5205(i) |

3.  Are you claiming a homestead exemption of more than $170,350?
(Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

☐ No

■ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ■ No

    ☐ Yes

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com



The Office of the Westchester County Clerk. This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.



*540843180DED003X*

# Westchester County Recording & Endorsement Page

## Submitter Information

Name: Stewart Title Insurance Company (pick up by Ramon

Address 1: 707 Westchester Avenue, Ste 411

Address 2:

City/State/Zip: White Plains NY 10604

Phone: 914-993-9393

Fax: 914-997-1698

Email: nymetrorecordings@stewart.com

Reference for Submitter: 1420316-Ravage

## Document Details

Control Number: 540843180

Package ID: 2014032500074001001

Document Type: **Deed (DED)**

Document Page Count: **3**

Total Page Count: **4**

## Parties

☐ Additional Parties on Continuation page

**1st PARTY**

1: CHEUNG CHEUK Y — Individual

2: TSE KA LING C — Individual

**2nd PARTY**

1: RAVAGE MARC — Individual

2: RAVAGE JULIE — Individual

## Property

☐ Additional Properties on Continuation page

Street Address: 30 LANDING DRIVE

City/Town: GREENBURGH

Tax Designation: 3.40-4-15.92

Village: DOBBS FERRY

## Cross- References

☐ Additional Cross-Refs on Continuation page

1:     2:     3:     4:

## Supporting Documents

1: RP-5217    2: TP-584

## Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $20.00 |
| Cross-Reference Fee: | $0.00 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $125.00 |
| TP-584 Filing Fee: | $5.00 |
| Total Recording Fees Paid: | **$190.00** |

## Transfer Taxes

| | |
|---|---|
| Consideration: | $865,000.00 |
| Transfer Tax: | $3,460.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | 9721 |

## Mortgage Taxes

Document Date:

Mortgage Amount:

| | |
|---|---|
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |

Dwelling Type:     Exempt: ☐

Serial #:

## RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK

Recorded: 04/07/2014 at 02:13 PM

Control Number: **540843180**

Witness my hand and official seal

Timothy C Idoni
Westchester County Clerk

## Record and Return To

☐ Pick-up at County Clerk's office

Horne & Childs
399 Knollwood Road

White Plains, NY 10603
Attn: Ron Childs, Esq.

STEWART TITLE INSURANCE COMPANY
707 Westchester Avenue, Suite 411
White Plains, NY 10604

— Bargain and Sale Deed, with Covenant against Grantor's Acts — Individual or Corporation (Single Sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the *AS OF* 31st day of March, in the year 2014

BETWEEN

Cheuk Yin Cheung and Ka Ling Carol Tse
30 Landing Drive, Dobbs Ferry, New York 10522

party of the first part, and

Marc Ravage and Julie Ravage , *husband and wife*
730 Columbus Avenue, #3F, New York, New York 10025

party of the second part,

WITNESSETH, that the party of the first part, in consideration of TEN dollars and other good consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Greenburgh, County of Westchester and State of New York, commonly known as 30 Landing Drive, Dobbs Ferry, New York 10522 , and more fully described on Schedule A annexed hereto.

BEING the same premises conveyed to the Party of the First Part herein by Deed dated June 16, 2010, and recorded on July 14, 2010 in the office of the Westchester County Clerk, Division of Land Records in Control #501673207.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____
Chuek Yin Cheung

_____
Ka Ling Carol Tse

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of Westchester, ss:

On the 31 day of March in the year 2014, before me, the undersigned, personally appeared Cheuk Yin Cheung and Ka Ling Carol Tse, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SHARYN CHILDS
Notary Public, State of New York
No. 31-4872995
Qualified in Westchester County
Commission Expires October 6, 20 14

Sharyn Childs
Notary Public, State of New York
No. 31-4872995
Qualified in Westchester County
Commission Expires October 6, 2014

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of Westchester, ss:

On the 28 day of March in the year 2014 before me, the undersigned, personally appeared , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

ROSEMARIE MUSCOLO
NOTARY PUBLIC, State of New York
4753356
Qualified in Westchester County
Commission Expires February 28, 2014

ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS
TAKEN IN NEW YORK STATE

State of New York, County of                    , ss:
On the          day of          in the year
before me, the undersigned, a Notary Public in and for said State, personally appeared
                    , the
subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

(if the place of residence is in a city, include the street and street number if any, thereof),
that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE

*State of          , County of          , ss:
*(Or insert District of Columbia, Territory, Possession or Foreign County)

On the          day of          in the year          ,
, before me the undersigned personally appeared

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the

(add the city or political subdivision and the state or country or other place the acknowledgement was taken).

## Bargain and Sale Deed with Covenant against Grantors Acts

Title No. ST14-20316

Chuek Tin Cheung and Ka Ling Carol Tse

TO

Marc Ravage and Julie Ravage

SECTION 3.40

BLOCK 4

LOT 15.92

COUNTY OR TOWN County of Westchester/ Town of Greenburgh

RETURN BY MAIL TO: 

Ronald C. Childs, Esq.
Home & Childs
399 Knollwood Road, #211
White Plains, New York 10603



NEW YORK METRO
800-853-4803
212-922-1593 fax
stewartnewyork.com

## SCHEDULE A – DESCRIPTION

Title No.:   ST14-20316

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Dobbs Ferry, Town of Greenburgh, County of Westchester and State of New York, shown and designated as Lot No. 92 on a certain map entitled "Amended Final Clustered Subdivision Plat prepared for The Landing at Dobbs Ferry, situate in the Village of Dobbs Ferry Town of Greenburgh, Westchester Co. N.Y.", dated November 1, 2000, revised December 29, 2000, prepared by Chas H. Sells and filed August 30, 2001 in the Westchester County Clerk's Office, division of Land Records, as Map No. 26856, being bounded and described as follows:

BEGINNING at a point on the northeasterly side of Landing Drive, where same is intersected by the dividing line between Lots 92 and 91 as shown on said map;

RUNNING THENCE along the last mentioned division line, North 52 degrees 59 minutes 21 seconds East, 82.48 feet to the division line between Lot 92 on the southwest and Homeowner Association Lands on the northeast;

RUNNING THENCE along the last mentioned division line, South 37 degrees 17 minutes 36 seconds East, 33.79 feet to the division line between Lot 92 on the northwest and Homeowner Association Lands on the southeast;

RUNNING THENCE along the last mentioned division line, South 52 degrees 59 minutes 58 seconds West, 82.65 feet to the northeasterly side of Landing Drive;

RUNNING THENCE along the said northeasterly side of Landing Drive, North 37 degrees 00 minutes 02 seconds West, 33.78 feet to the point or place of BEGINNING.

<u>For Deed Description Only (Not for Policy):</u>
Being and intended to be the same premises described in a certain deed from Robert A. Solomon, as Executor of the Estate of Jeffrey D. Bodner pursuant to the Last Will and Testament of Jeffrey D. Bodner and Terry Anne Frank dated 6/16/10 and recorded 7/14/10 in Control #601673207.

1

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.



*540923147MTG002Z*

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | Stewart Title Insurance Company (pick up by Ramon | Phone: | 914-993-9393 |
| Address 1: | 707 Westchester Avenue, Ste 411 | Fax: | 914-997-1698 |
| Address 2: | | Email: | nymetrorecordings@stewart.com |
| City/State/Zip: | White Plains NY 10604 | Reference for Submitter: | 1420316-Ravage |

### Document Details

| | | |
|---|---|---|
| Control Number: 540923147 | Document Type: **Mortgage (MTG)** | |
| Package ID: 2014032500074001001 | Document Page Count: **13** | Total Page Count: **14** |

### Parties
☐ Additional Parties on Continuation page

| 1st PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: RAVAGE MARC | - Individual | 1: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | - Other |
| 2: RAVAGE JULIE | - Individual | 2: FEDERAL SAVINGS BANK | - Other |

### Property
☐ Additional Properties on Continuation page

| | | | |
|---|---|---|---|
| Street Address: | 30 LANDING DRIVE | Tax Designation: | 3.40-4-15.92 |
| City/Town: | GREENBURGH | Village: | DOBBS FERRY |

### Cross- References
☐ Additional Cross-Refs on Continuation page

| | | | |
|---|---|---|---|
| 1: | 2: | 3: | 4: |

### Supporting Documents

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | 3/31/2014 |
| Page Fee: | $70.00 | Mortgage Amount: | $590,000.00 |
| Cross-Reference Fee: | $0.00 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $2,950.00 |
| RP-5217 Filing Fee: | $0.00 | Westchester: | $1,475.00 |
| TP-584 Filing Fee: | $0.00 | Additional: | $1,740.00 |
| | | MTA: | $1,475.00 |
| Total Recording Fees Paid: | $110.00 | Special: | $0.00 |
| Transfer Taxes | | Yonkers: | $0.00 |
| Consideration: | $0.00 | Total Mortgage Tax: | $7,640.00 |
| Transfer Tax: | $0.00 | | |
| Mansion Tax: | $0.00 | Dwelling Type: 1-2 Family | Exempt: ☑ |
| Transfer Tax Number: | | Serial #: DF00360 | |

| RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK | Record and Return To |
|---|---|
| Recorded: 04/07/2014 at 02:13 PM | ☐ Pick-up at County Clerk's office |
| Control Number: **540923147** | |
| Witness my hand and official seal | |
| Timothy C.Idoni | **The Federal Savings Bank** |
| Westchester County Clerk | 300 North Elizabeth Street |
| | Suite 3E |
| | Chicago, IL 60607 |

When recorded, return to:
The Federal Savings Bank
Attn: Final Document Department
300 North Elizabeth Street, Suite 3E
Chicago, IL 60607

1420316

STEWART TITLE INSURANCE COMPANY
707 Westchester Avenue, Suite 411
White Plains, NY 10604

SEC : 3.40
Block . 4
LOT : 15.92
COUNTY : Westchester

Title Order No.: ST14-20316

LOAN #

————————————————————[Space Above This Line For Recording Data]————————————————————

# MORTGAGE

MERS PHONE #: 1-888-679-6377

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated  March 31, 2014,                together with all Riders
to this document, will be called the "Security Instrument."
(B) "Borrower."  JULIE RAVAGE AND MARC RAVAGE, WIFE AND HUSBAND,

whose address is   30 Landing Drive
Dobbs Ferry, NY 10522,

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware,
and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street,
Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS. FOR PURPOSES OF RECORDING
THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender."  The Federal Savings Bank;

will be called "Lender."

Lender is a corporation or association which exists under the laws of   Kansas.
Lender's address is   300 North Elizabeth Street, Suite 3E, Chicago, IL 60607

(E) "Note." The note signed by Borrower and dated March 31, 2014,                will be called the "Note." The
Note shows that I owe Lender  FIVE HUNDRED NINETY THOUSAND AND NO/100 · · · · · · · · · · · · · · · · · · · · · · ·
· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · Dollars (U.S. $590,000.00             )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by  April 1, 2044.
(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the
"Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the
Property" sometimes will be called the "Sums Secured."
(I)  "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The
following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider         ☐ Second Home Rider
☐ Balloon Rider            ☒ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider
☐ V.A. Rider

(J)  "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and adminis-
trative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will
be called "Applicable Law."

Initials: _____

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01
Ellie Mae, Inc.                          Page 1 of 10                          NYEDEED   1212
                                                                              NYEDEED



**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means Insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment." .

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

    (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

    (A) The Property which is located at  30 Landing Drive, Dobbs Ferry,

[Street] [City, Town or Village]

New York  10522.

[Zip Code]

This Property is in  Westchester  County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
APN #:  2603-003-040-00004-000-0015-92

    (B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

    (C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

    (D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

    (E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

    (F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

    (G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) though (F) of this section.

Initials: 

NYEDEED  1212
NYEDEED

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNER-SHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a partial payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes And Insurance.**

(a) **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all

Initials: 

Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.    Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these Items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.    Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certifica- tion services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01
Ellie Mae, Inc.

Page 4 of 10

Initials: 

NYEDEED  1212
NYEDEED

Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the Insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the Insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying Insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all Insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Borrower's Obligations to Occupy the Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7.  Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a)  Maintenance and Protection of the Property. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If Insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b)  Lender's Inspection of Property. Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8.  Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9.  Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned

Initials: 

NYEDEED 1212
NYEDEED

the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to me of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or change their risk, or to reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any buyer of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction, provided that such inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.



In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations. Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my

Initials: _____
NYEDEED 1212
NYEDEED

change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property is Sold or Transferred.** Lender may require immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys'

fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales. The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join, or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental

Initials: 

Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights if Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument.

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3033 1/01
Ellie Mae, Inc.                                    Page 9 of 10

Initials: _____
NYEDEED 1212
NYEDEED

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ 3/31/14 (Seal)
JULIE RAVAGE                                      DATE

_____ 3/7/14 (Seal)
MARC RAVAGE                                       DATE


State of NEW YORK            )
                            ) SS:
County of WESTCHESTER        )


On the 31ST day of MARCH in the year 2014, before me, the undersigned, a Notary Public in and for said State, personally appeared JULIE RAVAGE AND MARC RAVAGE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument,the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

SHARYN CHILDS
Notary Public, State of New York
No. 31-4872995
Qualified in Westchester County
Commission Expires October 6, 2014

My commission expires: _____

*Sharyn Childs*
*Notary Public, State of NY*
*NO. 31-4872995*
*Qualified in Westchester County*
*Commission Expires October 6, 2014*

County  Westchester
Town    Dobbs Ferry
Sect    8.40
Block   4
Lot     15.92

Lender: The Federal Savings Bank
NMLS ID: 411500
Loan Originator: Brian Michael Kohlstedt
NMLS ID: 216947



# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **31ST**       day of
**March, 2014**          and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note
to  The Federal Savings Bank, a Federal Savings Bank

(the "Lender")
of the same date and covering the Property described in the Security Instrument and
located at:  30 Landing Drive, Dobbs Ferry, NY 10522.

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described
in  **COVENANTS, CONDITIONS AND RESTRICTIONS**

(the "Declaration").
The Property is a part of a planned unit development known as  **THE LANDING/DOBBS FERRY AMD**
(the "PUD"). The Property also includes Borrower's interest in the homeowners
association or equivalent entity owning or managing the common areas and facilities
of the PUD (the "Owners Association") and the uses, benefits and proceeds of
Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the
PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration;
(ii) articles of incorporation, trust instrument or any equivalent document which creates
the Owners Association; and (iii) any by-laws or other rules or regulations of the Own-
ers Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a gen-
erally accepted insurance carrier, a "master" or "blanket" policy insuring the Property
which is satisfactory to Lender and which provides insurance coverage in the amounts
(including deductible levels), for the periods, and against loss by fire, hazards included
within the term "extended coverage," and any other hazards, including, but not limited
to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives
the provision in Section 3 for the Periodic Payment to Lender of the yearly premium
installments for property insurance on the Property; and (ii) Borrower's obligation under
Section 5 to maintain property insurance coverage on the Property is deemed satisfied
to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property
insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or
repair following a loss to the Property, or to common areas and facilities of the PUD, any
proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender
shall apply the proceeds to the sums secured by the Security Instrument, whether or
not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reason-
able to ensure that the Owners Association maintains a public liability insurance policy
acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or
consequential, payable to Borrower in connection with any condemnation or other
taking of all or any part of the Property or the common areas and facilities of the PUD,
or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid

Initials: 

MULTISTATE PUD RIDER–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                                    Page 1 of 2                             F3150RDU   0208
                                                                                            F3150RLU

to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
JULIE RAVAGE                          DATE    3/13/14

_____ (Seal)
MARC RAVAGE                           DATE    3/31/14

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                          Page 2 of 2                          F3150RDU  0208
                                                                             F3150RLU




## EXHIBIT A — DESCRIPTION

Title No.: ST14-20316

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Dobbs Ferry, Town of Greenburgh, County of Westchester and State of New York, shown and designated as Lot No. 92 on a certain map entitled "Amended Final Clustered Subdivision Plat prepared for The Landing at Dobbs Ferry, situate in the Village of Dobbs Ferry Town of Greenburgh, Westchester Co. N.Y.", dated November 1, 2000, revised December 29, 2000, prepared by Chas H. Sells and filed August 30, 2001 in the Westchester County Clerk's Office, division of Land Records, as Map No. 26856, being bounded and described as follows:

BEGINNING at a point on the northeasterly side of Landing Drive, where same is intersected by the dividing line between Lots 92 and 91 as shown on said map;

RUNNING THENCE along the last mentioned division line, North 52 degrees 59 minutes 21 seconds East, 82.48 feet to the division line between Lot 92 on the southwest and Homeowner Association Lands on the northeast;

RUNNING THENCE along the last mentioned division line, South 37 degrees 17 minutes 36 seconds East, 33.79 feet to the division line between Lot 92 on the northwest and Homeowner Association Lands on the southeast;

RUNNING THENCE along the last mentioned division line, South 52 degrees 59 minutes 58 seconds West, 82.65 feet to the northeasterly side of Landing Drive;

RUNNING THENCE along the said northeasterly side of Landing Drive, North 37 degrees 00 minutes 02 seconds West, 33.78 feet to the point or place of BEGINNING.

<u>For Deed Description Only (Not for Policy):</u>
Being and intended to be the same premises described in a certain deed from Robert A. Solomon, as Executor of the Estate of Jeffrey D. Bodner pursuant to the Last Will and Testament of Jeffrey D. Bodner and Terry Anne Frank dated 6/16/10 and recorded 7/14/10 in Control #601673207.





**U.S. Bank Home Mortgage**
4801 Frederica Street
Owensboro, KY 42301

**Home Mortgage**

NOTICE: Our records show that you are a debtor in bankruptcy or have discharged your personal liability for this account in bankruptcy. We are sending this statement to you for informational and compliance purposes only. This is not an attempt to collect a debt against you.

If you want to stop receiving statements, write to us at U.S. Bank Home Mortgage, Attn: Bankruptcy Dept. 4801 Frederica Street, Owensboro, KY 42301. If you later decide you want to begin receiving statements again, write to us at U.S. Bank Home Mortgage, Attn: Bankruptcy Dept. 4801 Frederica Street, Owensboro, KY 42301.

JULIE RAVAGE
MARC RAVAGE
30 LANDING DR
DOBBS FERRY NY 10522-1182

## Mortgage Statement

| | |
|---|---|
| Statement Date | 10/07/2019 |
| **Account Number** | |
| Scheduled Payment Date | 11/01/2019 |
| **Total Contractual Amount** | **$5,506.54** |

## Explanation of Total Contractual Amount

| PAYMENT FACTORS | |
|---|---|
| Principal | $2,054.46 |
| Interest | $402.67 |
| Tax - City | $1,477.78 |
| Additional Taxes | $132.67 |
| Insurance | |
| **PAYMENT AMOUNT** | **$5,506.54** |
| **TOTAL CONTRACTUAL AMOUNT** | **$5,506.54** |

Total Contractual Amount is not a Payoff or Reinstatement amount.

## Contact Information

800-365-7772

**Live Customer Support:** Mon-Fri 7:00 am - 8:00 pm CT and Sat 8:00 am - 2:00 pm CT
Automated Services are available at this number 24 hours

Live Hearing Impaired Customer Support: Monday-Friday, 8:00 a.m.-5:00 p.m. CT    800-874-5563
A TDD/TTY machine is required when calling this number.

**Correspondence Address**
U.S. Bank Home Mortgage
P.O. Box 21948
Eagan, MN 55121
Website

**Notice of Error and Request for Information**
U.S. Bank Home Mortgage
P.O. Box 21977
Eagan, MN 55121
www.usbankhomemortgage.com

## Account Information

Property Address    30 LANDING DRIVE
                    DOBBS FERRY NY 10522

| | |
|---|---|
| Outstanding Principal Balance (Not a Payoff Amount) | $533,047.75 |
| Interest Rate | 4.62500% |
| Maturity Date | 04/2041 |
| **Other Balances** | |
| Escrow | $7,373.98 |

*Paid 4/18/2019* (handwritten)

If You Are Experiencing Financial Difficulty: To find a HUD-certified counselor in your area, contact HUD at 800-569-4287 or visit the website at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm

## Past Payment Breakdown

| | PAID SINCE LAST STATEMENT | PAID YEAR TO DATE |
|---|---|---|
| Principal | $975.21 | $9,585.30 |
| Interest | $2,058.21 | $20,748.90 |
| Escrow | $2,473.12 | $26,846.72 |

Payment breakdown represents current year transaction activity applied to the account, which may include adjustments to prior year transactions.

## Transaction Activity

| Description | Payment Date | Date | Total | Principal | Interest | Escrow | Fees/RCA | Other | Subsidy/Repl Reserve | Suspense |
|---|---|---|---|---|---|---|---|---|---|---|
| School Tax Disb | 09/16/2019 | 09/16/2019 | | | | 9005.74- | | | | |
| Int on Esc Deposit | 09/2019 | 09/30/2019 | 51.14 | | | 51.14 | | | | |
| Payment | 09/2019 | 10/07/2019 | 5506.54 | 975.21 | 2058.21 | 2473.12 | | | | |

## IMPORTANT MESSAGES

**Partial Payments:** Partial payments are held in suspense until sufficient funds are received to equal a full monthly payment. Once we receive funds equal to a full monthly payment, we will apply those to your account as applicable.

Our Complaint Process - Please submit any mortgage loan level, estate or foreclosure alternative process related complaint to U.S. Bank Attention: Consumer Advocacy, P.O. Box 211255 Eagan, MN 55121. Your submission should include the name of each borrower and the loan number.

## Notices of Error and Requests for Information

Borrowers have certain rights under Federal law related to resolving errors and requesting information about their mortgage account. Notices of Error and Requests For Information must be directed to U.S. Bank Attention: Consumer Advocacy, P.O. Box 21977, Eagan, MN 55121. Your submission must be in writing and include the name of each borrower, the loan number and a description of the error you believe has occurred OR a request for specific information regarding your mortgage loan.



17 29867

## MORTGAGE DEED

THIS MORTGAGE, made as of the 3rd _3_ day of May, 2017, *having an address of 30 Landing Drive Greenburgh NY*

BETWEEN MARC RAVAGE and JULIE C. RAVAGE both residing in Dobbs Ferry, New York, the mortgagor and *having an address of 173 Horizon Lane*

 ERIK BARTONE of Glastonbury, Connecticut *06033* the mortgagee,

WITNESSETH, that to secure the payment of an indebtedness in the sum of Two Hundred Seventy-Five Thousand and 00/100 ($275,000.00) dollars, lawful money of the United States, to be paid with interest thereon to be computed from the date hereof, and to be paid on the 10th day of May, 2017 and each and every Wednesday thereafter, through and including November 1, 2017 according to certain bonds, notes or obligations bearing even date herewith, the mortgagor hereby mortgages to the mortgagee

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being known as 30 Landing Lane, Dobbs Ferry, New York and described as follows:

SEE SCHEDULE A ATTACHED HERETO

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

TOGETHER with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments

and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

**AND** the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any installment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in installments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first installment becomes due or payable or a lien.

5. That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the mortgagor warrants the title to the premises.

The attached mortgage covers real property improved by a one or two family dwelling only.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

13. That the mortgagor hereby assigns to the mortgagee the rents, issues and profits of the premises as further security for the payment of said indebtedness, and the mortgagor grants to the mortgagee the right to enter upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage, and agrees to use such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default, on five days' written notice. The mortgagor will not, without the written consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and upon default in any such

payment will vacate and surrender the possession of said premises to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of the land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage.

15. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

This mortgage may not be changed or terminated orally. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall enure to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if it read "mortgagors" and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage so requires.

**IN WITNESS WHEREOF**, this mortgage has been duly executed by the mortgagor.

Julie C. Ravage

STATE OF NEW YORK, COUNTY OF New York , ss.

On the 2ND day of May, 2017, before me, the undersigned, personally appeared Julie C. Ravage, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

SHAZEEDA NAJMOODIN
Notary Public - State of New York
NO. 01NA6160715
Qualified in New York County
My Commission Expires Apr 8, 2019

Notary Public
My commission expires on

**IN WITNESS WHEREOF**, this mortgage has been duly executed by the mortgagor.

_____
Marc Ravage

STATE OF NEW YORK, COUNTY OF _New York_.                    , ss.

On the _3_ day of May, 2017, before me, the undersigned, personally appeared Marc Ravage, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

My commission expires on _02 21 2020_

SAFRAZ DEEN
Notary Public - State of New York
NO. 01DE6255959
Qualified in Kings County
My Commission Expires 02-21-2020

Safraz Deen
Notary Public - State of New York
No. 01DE6255959
Qualified in Kings County
My Commission Expires 02-21-2020

# SCHEDULE A – DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Dobbs Ferry, Town of Greenburgh, County of Westchester and State of New York, shown and designated as Lot No. 92 on a certain map entitled "Amended Final Clustered Subdivision Plat prepared for The Landing at Dobbs Ferry, situate in the Village of Dobbs Ferry Town of Greenburgh, Westchester Co. N.Y.", dated November 1, 2000, revised December 29, 2000, prepared by Chas H. Sells and filed August 30, 2001 in the Westchester County Clerk's Office, division of Land Records, as Map No. 26856, being bounded and described as follows:

BEGINNING at a point on the northeasterly side of Landing Drive, where same is intersected by the dividing line between Lots 92 and 91 as shown on said map;

RUNNING THENCE along the last mentioned division line, North 52 degrees 59 minutes 21 seconds East, 82.48 feet to the division line between Lot 92 on the southwest and Homeowner Association Lands on the northeast;

RUNNING THENCE along the last mentioned division line, South 37 degrees 17 minutes 36 seconds East, 33.79 feet to the division line between Lot 92 on the northwest and Homeowner Association Lands on the southeast;

RUNNING THENCE along the last mentioned division line, South 52 degrees 59 minutes 58 seconds West, 82.65 feet to the northeasterly side of Landing Drive;

RUNNING THENCE along the said northeasterly side of Landing Drive, North 37 degrees 00 minutes 02 seconds West, 33.78 feet to the point or place of BEGINNING.

For Deed Description Only (Not for Policy):
Being and intended to be the same premises described in a certain deed from Robert A. Solomon, as Executor of the Estate of Jeffrey D. Bodner pursuant to the Last Will and Testament of Jeffrey D. Bodner and Terry Anne Frank dated 6/16/10 and recorded 7/14/10 in Control #601673207.

Reorder No. 5105
JULIUS BLUMBERG, INC.
NYC 10013
©1976 P.C.W.



# MORTGAGE

THIS MORTGAGE, made as of the _13th_ day of October, 2017, _30 Landing Lane_

BETWEEN MARC RAVAGE and JULIE C. RAVAGE both residing in Dobbs Ferry, New York, the mortgagor and _30 Sebethe Drive_

BART FINANCIAL, LLC of Cromwell, Connecticut, the mortgagee,

WITNESSETH, that to secure the payment of an indebtedness in the sum of Three Hundred Thousand and 00/100 ($300,000.00) dollars, lawful money of the United States, to be paid with interest thereon to be computed from the date hereof, and to be paid on the 25th day of October, 2017 and each and every Wednesday thereafter, through and including January 5, 2021 according to certain bonds, notes or obligations bearing even date herewith, the mortgagor hereby mortgages to the mortgagee

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being known as 30 Landing Lane, Dobbs Ferry, New York and described as follows:

SEE SCHEDULE A ATTACHED HERETO

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

TOGETHER with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but not limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changes of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittances therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the

mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

**AND** the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee: after default in the payment of any installment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in installments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first installment becomes due or payable or a lien.

5. That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail.

9. That the mortgagor warrants the title to the premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within

thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest thereon at the rate of six per cent per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

13. That the mortgagor hereby assigns to the mortgagee the rents, issues and profits of the premises as further security for the payment of said indebtedness, and the mortgagor grants to the mortgagee the right to enter upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. This assignment and grant shall continue in effect until this mortgage is paid. The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in this mortgage, and agrees to use such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default, on five days' written notice. The mortgagor will not, without the written consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

14. That the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a) after failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of the land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage.

15. That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

This mortgage may not be changed or terminated orally. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrancers, tenants and subtenants of the premises, and shall enure to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if it read "mortgagors" and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage so requires.

* This security Instrument covers real property Improved, or to be improved, by a one or two family dwelling only.

# SCHEDULE A

# PROPERTY DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Dobbs Ferry, Town of Greenburgh, County of Westchester and State of New York, shown and designated as Lot No. 92 on a certain map entitled "Amended Final Clustered Subdivision Plat prepared for The Landing at Dobbs Ferry, situate in the Village of Dobbs Ferry Town of Greenburgh, Westchester Co. N.Y.", dated November 1, 2000, revised December 29, 2000, prepared by Chas H. Sells and filed August 30, 2001 in the Westchester County Clerk's Office, division of Land Records, as Map No. 26856, being bounded and described as follows:

BEGINNING at a point on the northeasterly side of Landing Drive, where same is intersected by the dividing line between Lots 92 and 91 as shown on said map;

RUNNING THENCE along the last mentioned division line, North 52 degrees 59 minutes 21 seconds East, 82.48 feet to the division line between Lot 92 on the southwest and Homeowner Association Lands on the northeast;

RUNNING THENCE along the last mentioned division line, South 37 degrees 17 minutes 36 seconds East, 33.79 feet to the division line between Lot 92 on the northwest and Homeowner Association Lands on the southeast;

RUNNING THENCE along the last mentioned division line, South 52 degrees 59 minutes 58 seconds West, 82.65 feet to the northeasterly side of Landing Drive;

RUNNING THENCE along the said northeasterly side of Landing Drive, North 37 degrees 00 minutes 02 seconds West, 33.78 feet to the point or place of BEGINNING.

For Deed Description Only (Not for Policy):
Being and intended to be the same premises described in a certain deed from Robert A. Solomon, as Executor of the Estate of Jeffrey D. Bodner pursuant to the Last Will and Testament of Jeffrey D. Bodner and Terry Anne Frank dated 6/16/10 and recorded 7/14/10 in Control #601673207.

**IN WITNESS WHEREOF**, this mortgage has been duly executed by the mortgagor.

_____
Julie C. Ravage

STATE OF NEW YORK, COUNTY OF New York ss.

On the 13 day of October, 2017, before me, the undersigned, personally appeared Julie C. Ravage, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

SHAZEEDA NAJMOODIN
Notary Public - State of New York
NO. 01NA6160715
Qualified in New York County
My Commission Expires Apr 8, 2019

_____
Notary Public
My commission expires on

**IN WITNESS WHEREOF**, this mortgage has been duly executed by the mortgagor.

BORROWER:

_____
Marc Ravage

STATE OF NEW YORK, COUNTY OF New York ss.

On the 13 day of October, 2017, before me, the undersigned, personally appeared Julie C. Ravage, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

SHAZEEDA NAJMOODIN
Notary Public - State of New York
NO. 01NA6160715
Qualified In New York County
My Commission Expires Apr 8, 2019

_____
Notary Public
My commission expires on

N



# McClellan

## Sotheby's
### INTERNATIONAL REALTY

207 Wolf's Lane
Pelham, NY 10803
t 914.738.5150
f 914.738.7930
mcclellansir.com

June 29, 2019

Re: 30 Landing Drive

    Dobbs Ferry, NY 10522

To Whom It May Concern:

Based on my extensive experience and knowledge of the Westchester County real estate market and comparable properties, as well as walk thru inspection of the referenced property for which I represented the seller in 2010, it is my opinion that the referenced property has a current market value of $885,000.

Please feel free to contact me with any questions.

Sincerely,

Mari-Cris O'Neill

Licensed Associate Real Estate Broker

914-589-9636



## Judgment Details

| | |
|---|---|
| Warrant ID | E032548228W0015  View Filings |
| Defendant | JULIE C RAVAGE<br>INDIVIDUALLY AND AS A RESPONSIBLE PERSON OF PINNACLE WINE & LIQUOR INC.<br>30 LANDING DR 30 LANDING DR<br>DOBBS FERRY NY 105221182 |
| Plaintiff | NYS TAX COMMISSION<br>POB 5149<br>ALBANY NY 12205 |
| Judgment Amount | $27771.34 |
| Where perfected | WESTCHESTER SUPREME COURT |
| Transcript Filed In | |
| Transcript Date | |
| Date/time filed | 2019/03/06 09:00 AM |

Comments
To view one of the following tax warrant image(s), click one entry below. If the list is empty,no images are available.
Tax Warrants - E032548228W0015 - 3/6/2019

## Judgment Details

| | |
|---|---|
| Warrant ID | E032548228W0034  View Filings |

| | |
|---|---|
| Defendant | JULIE C RAVAGE<br>INDIVIDUALLY AND AS A RESPONSIBLE PESON OF PINNACLE WINE & LIQUOR INC.<br>30 LANDING DR 30 LANDING DR<br>DOBBS FERRY NY 105221182 |

| | |
|---|---|
| Plaintiff | NYS TAX COMMISSION<br>POB 5149<br>ALBANY NY 12205 |

| | |
|---|---|
| Judgment Amount | $16343.67 |
| Where perfected | WESTCHESTER SUPREME COURT |
| Transcript Filed In | |
| Transcript Date | |

| | |
|---|---|
| Date/time filed | 2019/05/01 09:00 AM |

Comments

To view one of the following tax warrant image(s), click one entry below. If the list is empty, no images are available.